UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYLA, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ALYA SKIN PTY. LTD.,<br><br>　　　　Defendant. | Case No. 19-cv-00679-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Re: Dkt. No. 35 |

Plaintiff, Ayla, LLC ("Ayla" or "Plaintiff") filed trademark infringement claims against Defendant Alya Skin Pty. Ltd. ("Alya Skin" or "Defendant") for its use of the ALYA and ALYA SKIN marks. *See* Dkt. No. 1. Before the Court is Defendant's motion to dismiss for lack of personal jurisdiction, for which briefing is complete. *See* Dkt. No. 36 ("Mot."), 40 ("Opp."), and 44 ("Reply"). Because Plaintiff has not shown that Defendant has sufficient contacts within California or the United States, the Court **GRANTS** Defendant's motion.

## I.　BACKGROUND

### A.　Plaintiffs' Allegations

Plaintiff alleges that Defendant, "has attempted to capitalize on Ayla's valuable reputation and customer goodwill in the AYLA® Mark by using the confusingly similar ALYA and ALYA SKIN marks in connection with the advertisement, marketing, promotion, sale, and/or offer for sale of beauty supplies and retail store services in a manner that creates consumer confusion." Dkt. No. 1 ¶15 ("Complaint"). To establish that the Court has personal jurisdiction over Defendant, Plaintiff specifically alleges that "Defendant sells its products . . . in California, . . . ships its products to California," and "markets and advertises its products and services online . . . through the https://www.alyaskin.com/ URL, which is available and accessible in California." *Id.*

¶ 3. Defendant also "markets and advertises its products and services through social media through its Instagram account, https://www.instagram.com/alyaskinaus/, and Facebook profile, https://www.facebook.com/alyaskinaus/, which are accessible in California." *Id.* Additionally, in its opposition to Defendant's motion, Plaintiff argues that Defendant has targeted consumers in California because "Defendant appears to have an agreement with U.S. based retailer Urban Outfitters which has several stores in California to offer for sale Defendant's products bearing the infringing marks," and claims "Defendant has worked with social medial influencers residing in California (and other parts of the U.S.) to market and promote" its products. Opp. at 9–10 (citing Dkt. No. 43 Ex. 8, 13, 15, 17).

Relying on the nationwide jurisdiction provision, Plaintiff additionally argues that Defendants have substantially targeted the United States as a whole because "the default pricing shown on Defendant's website is in U.S. Dollars," Defendant's products are marketed "as approved by the U.S. Food and Drug Administration and certified by the U.S. based entity PETA," and "Defendant has applied for a U.S. federal trademark registration for the infringing ALYA SKIN mark." *Id*. at 10 (citing Dkt. No. 43 Exs. 1–2).

### B. Defendant's Evidence in Support of Its Motion to Dismiss

James Hachem, co-founder of Alya Skin, submitted a declaration in support of Defendant's motion. *See* Dkt. No. 37. Hachem explained that Alya Skin has no "retail stores and none of its products are available in any retail store in the United States," "Alya Skin has no offices or branches in the U.S.," "[n]o Alya Skin officers, directors, or employees reside or are domiciled in the U.S.," and "Alya Skin does not advertise in any publications that are directed primarily towards California residents, nor does it target any marketing towards California." *Id.* ¶¶ 8–18. Hachem also indicated that "Alya Skin specifically targets the Australian market by advertising its local elements—its 'Australian native berries moisturizer' and its 'Australian Pink Clay Mask'—and by branding its products with the phrase 'Made with love in Australia.'" *Id.* ¶ 19. Hachem also noted that "less than 10% of its sales have been to the United States and less than 2% of its sales have been to California." *Id.* ¶ 10.

Manny Barbas, co-founder of Alya Skin, also submitted a declaration in support of

2

Defendant's motion. *See* Dkt. No. 44-1. Barbas stated that "Alya Skin does not employ or have any contracts with any Instagram influencers . . . [but] independently contracts with various intermediaries . . . located in the Philippines in order to contact Instagram influencers." *Id.* at ¶¶ 8–9. He also denied that Alya Skin has any contract with Urban Outfitters and noted that "[t]he overwhelming majority of Alya Skin's sales occur in Australia, New Zealand, China, and Canada." *Id.* ¶ 4, 20.

## II. LEGAL STANDARD

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Although the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotation marks omitted), the court must resolve conflicts between the facts contained in the parties' affidavits in plaintiff's favor. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the court does not conduct an evidentiary hearing, the plaintiff need only make a prima facie showing of facts supporting personal jurisdiction to avoid dismissal. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001).

### A. California Personal Jurisdiction

Due process limits a court's power to "render a valid personal judgment against a nonresident defendant." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Where a state authorizes "jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States," as does California, *see* Cal. Civ. Proc. Code § 410.10, federal courts must determine whether the exercise of jurisdiction over a defendant "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014); *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same."). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have

3

certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted); *see also Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.") (internal quotations omitted).

A plaintiff may invoke either general or specific personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, *i.e.*, comparable to a domestic enterprise in that State." *Daimler*, 571 U.S. at 133 n.11 (internal quotations, citations, and alterations omitted). Specific jurisdiction exists if: (1) the defendant has performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business in California; (2) the plaintiff's claims arise out of or result from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)). In evaluating reasonableness, courts must consider:

> (1) the extent of the defendant's purposeful injection into the forum;
> (2) the defendant's burdens from litigating in the forum;
> (3) the extent of conflict with the sovereignty of the defendant's state;
> (4) the forum state's interest in adjudicating the dispute;
> (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
> (7) the existence of an alternative forum.

*Ziegler v. Indian River Cty.*, 64 F.3d 470, 475 (9th Cir. 1995).

### B.  Nationwide Jurisdiction Provision

Federal Rule of Civil Procedure 4(k)(2) "is not limited to the contours of a state longarm statute," *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007), and provides a mechanism to establish personal jurisdiction over a defendant if "the defendant is not

subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2). Three requirements must be met in order to establish personal jurisdiction under Rule 4(k)(2):

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

*Pebble Beach*, 453 F.3d at 1159. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, [the Court] consider[s] contacts with the nation as a whole." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017) (quoting *Holland Am. Line*, 485 F.3d at 462).

## III. DISCUSSION

### A. California General and Specific Jurisdiction

Alya Skin's principal place of business is located in Victoria, Australia. *See* Mot. at 6. Thus, as Plaintiff concedes, the Court does not have general jurisdiction over Alya Skin. *See* Mot. at 9–10.

Nor does the Court have specific personal jurisdiction over Alya Skin. Plaintiff contends that under the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984), Defendant has purposefully availed itself to conduct business in the forum state. "[T]he 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Plaintiff fails to show that any conduct was expressly aimed at California.

Plaintiff argues that Defendant's operation of its website, which allows for the shipping and sale of products to California, and its use of social media influencers show that Defendant was directly targeting the forum. Opp. at 13–17. While "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to confer personal jurisdiction," *Rio Properties, Inc.*, 284 F.3d at 1020, Plaintiff's allegations do not constitute "something more." "In determining whether a nonresident defendant has done

5

something more, we have considered several factors, including the interactivity of the defendant's website, . . . the geographic scope of the defendant's commercial ambitions, . . . and whether the defendant individually targeted a plaintiff known to be a forum resident." *Mavrix Photo*, 647 F.3d at 1229 (citations omitted).

Defendant argues that its website "is standard for any modern website—it simply allows for reviews of products and permits consumers to make online purchases." Mot. at 15 (citing Dkt. No. 37 ¶ 9). Plaintiff attempts to present conflicting facts, which generally the Court must weigh in Plaintiff's favor, by noting the website also has a messaging system and that consumers may sign up for marketing materials, including "access to deals, information on product launches, and beauty tips." Opp. at 14. The Court notes, however, that these are still features of a standard, modern website, and not features that reflect any targeting of California consumers. Many district courts have declined to find express aiming based on alleged sales of products that infringe intellectual property rights through commercial, interactive websites accessible to California consumers. *See, e.g.*, *Inventors Row Inc. v. Blankenship*, No. CV 17-2387 WBS EFB, 2018 WL 2064795, at *4 (E.D. Cal. May 3, 2018); *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 883 (N.D. Cal. 2012); *Sanho Corp. v. Cimo Techs., Inc.*, No. C 11-2473 PJH, 2012 WL 3075094, at *5 (N.D. Cal. July 30, 2012).[1]

Defendant's sales in California constitute less than 2% of all sales (where all purchases are made online). This de minimis amount cannot show express aiming when the "overwhelming majority" of sales occur in "Australia, New Zealand, China, and Canada." Dkt. No. 44-1 ¶ 20. Finally, a plaintiff does not show express aiming by alleging injuries that are "entirely personal to him and would follow him wherever he might choose to live or travel" and "not tethered to California in any meaningful way." *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015). Had Plaintiff filed this action in any other state, the evidence would be almost identical (with the caveat that total sales may be less than 1% in other states). This includes Plaintiff's allegations regarding

---

[1] Plaintiff's hiring of investigators to purchase and receive the products in California does not change the outcome. *See Clarus Transphase Sci., Inc. v. Q-Ray, Inc.*, No. C06-3450 JF-RS, 2006 WL 2374738, at *3 (N.D. Cal. Aug. 16, 2006) ("A plaintiff cannot manufacture personal jurisdiction in a trademark case by purchasing the accused product in the forum state.").

1 social media influencers who are located worldwide and have followers that similarly reflect their
2 transnational reach. The Court concludes that Plaintiff fails to allege facts showing that Defendant
3 engaged in conduct expressly aimed at California. Because this ground is sufficient to conclude
4 that Plaintiff has not established specific personal jurisdiction, the Court need not address the
5 remaining factors.

### B. Nationwide Jurisdiction

Finally, Plaintiff contends the Court has jurisdiction under the national jurisdiction provision, Rule 4(k)(2). Opp. at 24–29. The Court agrees that Plaintiff easily meets the first and second requirements—the claim arises under federal law (trademark infringement under 15 U.S.C. § 1114) and Defendant is not subject to the general jurisdiction of any other state. *See Holland Am. Line*, 485 F.3d at 462 ("absent any statement from [defendant] that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met."). The only question that remains is whether exercise of personal jurisdiction comports with due process. As noted above, the Court's inquiry is the same as the traditional personal jurisdiction analysis, but its focus must be on the Defendant's contacts with the United States as a whole. *Axiom*, 874 F.3d at 1072.

In support of its position that Defendant has purposefully availed itself of jurisdiction in the United States, Plaintiff points to Defendant's filing of an application with the United States Patent and Trademark Office ("PTO"), operation of a website accessible to all U.S. consumers, use of "Black Friday" (traditionally a large shopping day in the United States) marketing materials, use of U.S. dollars on its website, promotion of its products by U.S.-based social media influencers, being featured in U.S. based publications, placement on the People for the Ethical Treatment of Animals ("PETA") "Don't Test" list, and shipment of products from a U.S. facility. *See* Opp. 26–29. Plaintiff argues that these facts compel the conclusion that Defendant has substantial contacts with the United States, such that exercising personal jurisdiction over Alya Skin is appropriate. *Id.*

Plaintiff fails to make the required prima facie showing that Defendant has purposefully availed itself of the jurisdiction of the United States. Plaintiff primarily relies on its allegation that

7

Defendant has "engaged with social media influencers across the U.S. to promote its products . . . [and] likely . . . has entered into some sort of agreement or contractual relationships with these various individuals." Opp. at 27–28 (citing Dkt. No. 43 Ex. 10–12 and Dkt. No. 41 ¶ 3). However, social media influencers' followers—the consumers relevant for the jurisdictional analysis—do not necessarily reside in the same locale as the influencer. That Plaintiff can point to a handful of influencers based in the United States from the allegedly hundreds of influencers that have promoted Defendant's products, *see* Reply at 13, does not amount to meaningful contacts with the United States where there is no evidence that those influencers' followers are based in the United States. Additionally, the Court notes that "no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).

Plaintiff alleges that Defendant has an agreement with a U.S. based retailer, Urban Outfitters, while Defendant denies any such agreement. Dkt. No. 43 Ex. 15, Dkt. No. 44-1 ¶ 4. Although the Court must resolve conflicts between the facts contained in the parties' affidavits in Plaintiff's favor, Plaintiff provides no evidence of sales or any other evidence that a contract actually exists. In light of the international presence of this retailer, the Court cannot say that this single, bare allegation establishes minimum contacts with the United States. *Cf. Ebates Inc. v. Cashbag.co.za*, No. 18-CV-02884-EDL, 2018 WL 6816113, at *5 (N.D. Cal. Oct. 30, 2018), report and recommendation adopted, No. C 18-2884 SBA, 2019 WL 1095820 (N.D. Cal. Jan. 14, 2019) (finding jurisdiction where defendants worked with U.S. based retailers to target U.S. based customers, but relying in large part on a published Whitepaper setting forth defendants' strategy to target the United States).

As to Plaintiff's allegation regarding Defendant's application with the PTO, that fact does not establish minimum contacts that would justify bringing a foreign company into federal court. *See Fumoto Giken Co. v. Mistuoka*, No. CV149797DMGMRWX, 2015 WL 12766167, at *5 (C.D. Cal. Apr. 16, 2015) ("Particularly given the Ninth Circuit's cautious application of Rule 4(k)(2), this Court is not persuaded that the mere registration of a trademark with the PTO, without more, amounts to the type of minimum contacts which would justify haling a foreign

8

defendant into federal court."); *Platinum Performance, Inc. v. Pro Dev., GmbH*, No. CV 07-4610-GW(VBKX), 2009 WL 10676261, at *7 (C.D. Cal. June 3, 2009) ("it could be argued as a matter of public policy, that the act of seeking to register a trademark with the PTO should not thereby subject the seeker to the jurisdiction of every state forum where there is a person who believes that the seeker's trademark is similar to its own."); *but see Monster Cable Prod., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009) (finding an "application to the PTO to gain trademark protection in the United States for its . . . mark constitutes a substantial contact."). Importantly, Defendant has now abandoned its trademark application, and any past application is not relevant to the Court's jurisdictional analysis. *See* Dkt. No. 48-1 ¶ 3, 48-2.

Plaintiff's remaining allegations also fail. PETA is a global organization, and Defendant's placement on its "Don't Test" list establishes no U.S. contacts. Additionally, having a shipping facility in the United States from which Defendant ships products throughout the world does not indicate that it has targeted consumers within the United States. Although Plaintiff alleges that "[t]he default currency on Defendant's website is U.S. dollars," Opp. at 27, it is a standard feature of websites to prompt a default currency that matches the location of the individual attempting to access the website. As Defendant notes, "if an individual with a French Internet Provider ("IP") address accesses the Alya Skin's website, the default currency will be the Euro, while if the individual is in Australia, the default currency on the website will be in Australian dollars." Reply at 12. Defendant's being featured in publications and use of Black Friday sales promotion also do not constitute significant contacts where the features and sales were targeted internationally. *See* Dkt. 44-1 Ex. G, H; *see also Holland Am.* Line, 485 F.3d at 462 ("unspecified advertising in various . . . publications hardly constitute significant contacts."). In sum, Plaintiff's allegations do not amount to sufficient contacts to show that Defendant has purposefully availed itself of jurisdiction in the United States.

Moreover, even if Plaintiff had shown purposeful availment, the Court finds that exercising jurisdiction would not be reasonable in this case. Defendant's contacts with the United States are very limited. Defendant's marketing strategy is global in nature, reaching customers around the world through Instagram influencers. That some are located within the United States

9

does not establish purposeful injection, especially when the influencers' followers are not necessarily from any specific region. Further, the burden on Defendant of litigating in this district would be great: most individuals with information related to Defendant's alleged infringement of Plaintiff's trademark claims reside in Australia. *See* Dkt. No. 37 ¶ 12–13; *see also Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1776 (2017) ("The 'primary concern' in assessing personal jurisdiction is 'the burden on the defendant.'") (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (2004)). Defendant also has suggested the availability of trademark protection in Australia, given that nation's membership in the World Trade Organization. *See* Mot. at 18. Plaintiff has not refuted this allegation, nor proven the unavailability of that forum. As "[t]he plaintiff bears the burden of proving the unavailability of an alternative forum," there appears to be an alternative forum for Plaintiff to bring its claims. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993).

Finally, the Ninth Circuit has urged cautious application of Rule 4(k)(2). *See Holland Am. Line*, 485 F.3d at 462 (noting that the Ninth Circuit has never countenanced jurisdiction under Rule 4(k)(2), and that the "few cases in which [] sister circuits have concluded that Rule 4(k)(2) conferred jurisdiction have involved defendants with much more extensive contacts to this country."). The *Holland* court cited *Mwani v. bin Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005) (upholding jurisdiction where defendants had engaged in numerous conspiracies to bomb the World Trade Center, the United Nations, and the Lincoln and Holland Tunnels), and *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004) (upholding personal jurisdiction where the defendant had directly insured hundreds of claims in the United States), as the rare cases finding jurisdiction under Rule 4(k)(2). Plaintiff's allegations do not come close to establishing the level of contacts shown in those cases, making the exercise of jurisdiction in this case unreasonable.

//

//

//

10

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss for lack of personal jurisdiction. The Court **DIRECTS** the clerk to terminate the case.

**IT IS SO ORDERED.**

Dated: 11/13/2019

_Haywood S. Gilliam, Jr._
HAYWOOD S. GILLIAM, JR.
United States District Judge